# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIMOTHY W. BURKE<br><br>*Petitioner*,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>*Respondent*. | No. 3:18cv718 (MPS) |

**RULING ON § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Timothy W. Burke seeks to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel. For the reasons set forth below, his motion is DENIED.

## I. Background

Burke engaged in a long-running mail fraud scheme to obtain rent proceeds that he was not entitled to accept or retain. *United States v. Burke et al*, Dkt. 16-cr-29, ECF No. 154 (Final Pre-Sentence Report, "PSR") at ¶¶ 11-22. He did this by deceiving distressed homeowners into believing that he would negotiate with mortgage lenders on their behalf and indemnify them for mortgage losses, allowing them to believe that they could walk away from mortgages that were "under water"; he thereby gained control (but not ownership) of their properties and advertised those properties for rent to unsuspecting tenants. *Id*. He also had substantial unpaid personal tax liabilities and committed affirmative acts of evasion to avoid paying them. PSR at ¶ 23. On April 27, 2016, a grand jury returned a second superseding indictment charging him with conspiracy, mail fraud, wire fraud, aggravated identity theft, tax evasion, money laundering, and aiding and abetting. *United States v. Burke et al*, Dkt. 16-cr-29, ECF No. 79 (Second Superseding

1

Indictment). On January 24, 2017, Burke pled guilty to mail fraud, 18 U.S.C. § 1341, and tax evasion, 26 U.S.C. § 7201. *United States v. Burke et al*, Dkt. 16-cr-29, ECF No. 131 (Plea Agreement). On April 28, 2017, I sentenced him to 108 months in prison for mail fraud and 60 months in prison for tax evasion, to run concurrently. *United States v. Burke et al*, Dkt. 16-cr-29, ECF No. 169 (Judgment). He is currently confined at the United States Penitentiary in Lewisburg, Pennsylvania. Attorney James Maguire, of the Federal Public Defender's Office, represented Burke in his criminal case.

On April 26, 2018, Burke, appearing *pro se*, sought collateral relief by filing a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel from Attorney Maguire. ECF No. 1.

## II.  Legal Standards

### A.  Section 2255 Petition

Section 2255 permits collateral challenges to federal convictions. 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."). In deciding a Section 2255 motion, the court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A petitioner is therefore not automatically entitled to a hearing and no hearing is required "where the allegations are vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (internal quotation marks omitted); *see also Pham v. U.S.*, 317 F.3d 178, 184 (2d Cir. 2003) ("It

is within the district court's discretion to determine whether a hearing is warranted [in a Section 2255 case].").

"To warrant a hearing on an ineffective assistance of counsel claim, the [petitioner] need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (internal quotation marks omitted). He "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez*, 722 F.3d at 131. In considering such a claim, the court must "take into account admissions made by the [petitioner] at his plea hearing, for solemn declarations in open court carry a strong presumption of verity." *Id.* (internal quotation marks and alterations omitted). Finally, the court "need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding." *Puglisi*, 586 F.3d at 214.

### B. Ineffective Assistance of Counsel

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Supreme Court has held that this two-part test applies to ineffective assistance challenges to guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

The performance prong requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Where the alleged error is a failure to investigate, the "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

judgments," and keeping in mind that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. Where the alleged error is the decision not to pursue a particular defense, it "does not constitute deficient performance if . . . the lawyer has a reasonable justification for the decision." *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir.1996). Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 588 (citing *Strickland,* 466 U.S. at 690).

The prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Where "the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Id*. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Id*. "Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id*.

### III. Discussion

Burke makes three ineffective assistance of counsel claims. Specifically, he argues that Attorney Maguire (1) failed to investigate and present exculpatory evidence concerning tax evasion; (2) failed to investigate and present an affirmative defense to mail fraud; and (3) failed generally to conduct a reasonable pre-trial investigation of evidence that would have exculpated or mitigated his wrongdoing. ECF No. 4 at 9. He also argues that Attorney Maguire coerced him into entering a guilty plea. I address each claim in turn.

#### A. Ineffective Assistance in Connection with Guilty Plea to Tax Evasion

Burke pled guilty to tax evasion in violation of 26 U.S.C. § 7201. He acknowledged "substantial unpaid personal tax liabilities . . . for tax years 1994 through 2012" and stipulated that he "committed affirmative acts of evasion including, but not limited to, utilizing LLCs to acquire and possess assets, including real property, in order to hinder potential creditors, including the IRS and tenants, from discovering and seizing those assets." Plea Agreement at 15. He further stipulated that by "engaging in these acts of evasion, [he] specifically intended to defeat and not to pay the tax liabilities that he knew were outstanding and that he knew he had a duty and obligation to pay." *Id*. He now argues that Attorney Maguire failed to investigate and present exculpatory evidence related to the tax evasion charge and, consequently, led him to plead guilty rather than go to trial.

Burke explains that in 2010 he approached Attorney Anthony Parent to file tax returns for the delinquent years and seek an "offer in compromise" with the Internal Revenue Service ("IRS") to settle his overdue tax debt. ECF No. 4 at 11, 23-24, 27. He asserts that he told Attorney Maguire about his dealings with Attorney Parent and about the five individuals in his own office who worked on collecting and organizing his tax data over a number of years. *Id*. at

27-28 ¶ 14. He further states that he asked Attorney Maguire to obtain testimony from Attorney Parent and his staff, but that Attorney Maguire failed to do so. *Id*. at 28-29 ¶ 16. In sum, Burke argues that if there had been a trial, "it could have been shown . . . that from at least 2007, and through 2012, [he] had made voluminous bona fide efforts, at his own great expense, to resolve his overdue tax problems." *Id*. at 12. At trial, he argues, "the government would not have been able to prove, as a necessary element, [his] deliberate and willful intent to evade or defeat a tax owed, in the face of a plethora of verifiable efforts and expenditures on his part to resolve his overdue taxes in the seven years between his release from a prior incarceration and his arrest in this case." *Id*. at 14.

I find that it was reasonable for Attorney Maguire not to contact Burke's proposed witnesses or pursue a defense based on Burke's attempts to "resolve" his tax liabilities because such actions do not negate criminal liability for tax evasion. A person is guilty of tax evasion if he "willfully attempts in any manner to evade or defeat any tax imposed by [Title 26] or the payment thereof." 26 U.S.C. § 7201. "In order to prevail on a charge of income tax evasion in violation of 26 U.S.C. § 7201, the government must prove (1) the existence of a substantial tax debt, (2) willfulness of the nonpayment, and (3) an affirmative act by the defendant, performed with intent to evade or defeat the calculation or payment of the tax." *United States v. Josephberg*, 562 F.3d 478, 488 (2d Cir. 2009). The first and third of these elements were clearly established and Burke does not now challenge them. *See* Plea Agreement at 19 (showing the existence of a substantial tax debt); *id*. at 15 (Burke stipulating that he "committed affirmative acts of evasion including, but not limited to, utilizing LLCs to acquire and possess assets, including real property, in order to hinder potential creditors, including the IRS and tenants, from discovering and seizing those assets"). Although Burke also previously admitted that his conduct was willful,

*see id*. (Burke stipulating that "[b]y engaging in these acts of evasion, [he] specifically intended to defeat and not to pay the tax liabilities that he knew were outstanding and that he knew he had a duty and obligation to pay"), he now argues that Attorney Maguire should have investigated and presented evidence that he did not willfully evade paying taxes.

"Willfulness . . . requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). Burke does not contest that the law imposed a duty on him to pay taxes or that he knew of that duty. And his retention of counsel to file delinquent tax returns and seek an "offer in compromise" with the IRS does not change the fact that he knowingly took steps to avoid paying taxes that he knew he had an obligation to pay. He made this clear in his sworn testimony at the change-of-plea hearing:

> The Court: With regard to the tax evasion count, is it correct that you were aware that you had tax obligations that you did not pay between 1994 and 2012?
>
> The Defendant: Yes.
>
> The Court: Is it correct that you took steps to avoid having to pay those obligations, including using a series of different limited liability company names?
>
> The Defendant: Yes, sir.
>
> . . .
>
> The Court: And you were aware that the steps you were taking were designed to avoid your having to pay those taxes?
>
> The Defendant: Yes, your Honor. I had approached an attorney in 2010. His name is Anthony [Parent] in Wallingford, the IRS Medic, and I retained his firm and paid a total of $18,000 so that he could help me do – fix my tax situation.
>
> The Court: Okay. But it remains the case that you were aware that you had an obligation to pay taxes during those years, true?
>
> The Defendant: Yes.

>The Court: And that you took steps, including setting up these LLC's, to avoid having to comply with that obligation?
>
>The Defendant: Yes.
>
>The Court: Knowing that it was illegal to do that?
>
>The Defendant: Yes.

ECF No. 14-1 at 49-50. As the plea colloquy makes clear, Burke's decision to retain Attorney Parent's services and take steps to resolve his tax "situation" does not negate the willfulness of his decision to avoid paying taxes by setting up various LLCs. Similarly, Burke's assertion that he filed all of his tax returns on his own in early 2015, nearly a year before his arrest, ECF No. 4 at 28 ¶ 15, is unavailing because it does not negate the affirmative steps he took to avoid paying taxes that he knew he owed.

Burke also states that "Mr. Maguire failed to communicate [these facts] to the Court in the Sentencing Memorandum." ECF No. 4 at 29 ¶ 17. But Attorney Maguire did, in fact, argue that the Court should consider Burke's efforts to resolve his tax liabilities in determining an appropriate sentence. He included the following language in the sentencing memorandum to the Court:

>While Mr. Buke acknowledges that he avoided paying taxes when they were due, he was actively taking steps to lawfully resolve his tax debt. In 2010, Mr. Burke contacted an attorney, Anthony E. Parent, in an attempt to address his unpaid taxes. Mr. Burke hoped that with Mr. Parent's assistance, he would be able to develop a settlement plan with the IRS. PSR ¶ 30. This good-faith effort by Mr. Burke to address his unpaid taxes should be taken into account when considering the appropriate sentencing range for Mr. Burke's conduct.
>
>In addition to displaying Mr. Burke's acceptance of responsibility, these efforts to resolve his unpaid taxes, taken prior to his knowledge of the investigation that would result in this criminal case, indicate Mr. Burke's sincere desire to settle his debts with the IRS unrelated to any criminal proceedings. Although Mr. Burke acknowledges that he should have paid the IRS something, rather than attempting to first obtain a settlement or final resolution to his situation, his actions demonstrate his pre-existing desire and intent to

correct the consequences of his past action and place himself on stable lawful footing for the remainder of his life.

*United States v. Burke et al*, Dkt. 16-cr-29, ECF No. 156 at 22 (Burke Sentencing Memorandum).

This record makes clear that Burke has established neither deficient performance nor prejudice to his defense. First, regarding performance, it was reasonable for Attorney Maguire to determine that further investigation of Attorney Parent, Attorney Parent's team, and the efforts Burke had made to resolve his unpaid tax liability was unnecessary. Testimony from any of these individuals about Burke's after-the-fact efforts to resolve his tax liabilities would not have negated his criminal liability for tax evasion. Such efforts were, however, relevant to the Court's determination of an appropriate sentence – as Attorney Maguire argued in his sentencing memorandum. Attorney Maguire's performance was therefore not deficient.

Second, even if Attorney Maguire's performance was deficient, it did not prejudice Burke. For the reasons already discussed, evidence of Burke's efforts to resolve his tax liabilities was unlikely to change the outcome of a trial because such evidence is irrelevant to the willfulness of his nonpayment. *Hill*, 474 U.S. at 59 (explaining that where "the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence," the central inquiry is "whether the evidence likely would have changed the outcome of a trial"). Further, as noted, Attorney Maguire apprised the Sentencing Court of these efforts, and the Court took account of them in imposing sentence.[1]

---

[1] As the Government notes, even if Burke's 60-month sentence for tax evasion was vacated, he would still be subject to the concurrent 108-month sentence for mail fraud, although he would no longer be required to pay most of the restitution ordered by the Court.

### B. Ineffective Assistance in Connection with Guilty Plea to Mail Fraud

Burke pled guilty to mail fraud in violation of 18 U.S.C. § 1341 and stipulated to the following conduct. He "engaged in a mail fraud scheme . . . to obtain rents from tenants on properties that [he] falsely claimed to own" and "used a number of aliases to prevent the property owners and tenants he dealt with from discovering that he had been previously convicted of conspiracy to commit mail fraud and equity skimming." Plea Agreement at 14. He "primarily used the United States mail system to find prospective property owners who were in default on their mortgages and were facing a foreclosure action." *Id*. He then "falsely and fraudulently led property owners who were in default on their mortgages to believe that he would purchase their properties quickly via short sale or quit claim deed and indemnify the property owners for their outstanding mortgage obligations." *Id*. In some cases, he "caused an attorney [co-defendant Bradford Barneys] to speak to the property owners or witness the property owners sign a quit claim deed," *id*., even though he "knew that the information provided by the attorney was false and fraudulent," *id*. at 15. After obtaining control of these properties, Burke rented out the properties and, in some cases, "deliberately chose not to pay any of the outstanding mortgage obligations or property taxes due on these properties." *Id*.

Burke now argues that "it was incumbent upon Mr. Maguire to explore all viable defenses, including that [he] acted in detrimental reliance on the advice and representations by his attorney, Bradford Barneys." ECF No. 4 at 17. He goes on to allege that "Barneys was the law professional who legitimized the pacts to the homeowners who signed the forms that Barneys alone prepared and witnessed," and that "[l]ike the homeowners, [he] had no reason to doubt the orchestrations of his own counsel . . . or doubt the legality of the transactions undertaken since nothing was treated sub rosa." *Id*. He further alleges that "[t]he entire fabric of

the alleged fraud is underscored by Barneys' involvement that served to facilitate its success, and it was not a quantum leap for Mr. Maguire to have argued a defense that portrayed [him] as a victim whose services were exploited under the auspices of lawfulness." *Id*. at 17-18. Burke argues that "Maguire could have presented a convincing picture for a jury that Barneys controlled and manipulated an illegal operation in which [Burke] was an unwary participant." *Id*. at 20.

"Reliance on advice, offered as a defense, presupposes the defendant's solicitation of advice in good faith." *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997) (internal quotation marks and citations omitted); *U.S. v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989) ("[T]he Supreme Court has emphasized that an advice-of-counsel defense presupposes the defendant's solicitation of advice in good faith."). Such a defense "requires a defendant not only to seek the advice of a lawyer in good faith, but also that the defendant [acted] in good faith and honestly follow[ed] such advice." *Lasher v. United States*, 2018 WL 3979596, at *8 (S.D.N.Y. Aug. 20, 2018) (internal quotation marks omitted). Here, it was reasonable for Attorney Maguire not to pursue this defense because the record is replete with evidence that Burke did not solicit advice from Barneys in good faith, and devoid of evidence that he "fully and honestly [laid] all the facts before his counsel, and *in good faith and honestly [followed] such advice*." *Evangelista*, 122 F.3d at 117 (emphasis in original) (internal quotation marks omitted).

For instance, Burke used fake names, lied to distressed homeowners and prospective tenants, and repeatedly made promises that he did not keep, PSR at ¶¶ 14-15, 17-18, 22; ECF 14-1 at 44-47, suggesting that he knew his conduct was illegal and that he worked with Barneys as a co-conspirator instead of in good faith. Indeed, during the sentencing hearing, victims explained

11

to the Court how Burke lied to them. Victim KJ said: "I had no idea he was utilizing it to his own advantage and wasn't doing what he told me he was going to do . . . he didn't do the part that he was supposed to do as far as taking everything out of my name, making sure everything was taken care of." ECF No. 14-2 at 11. Victim LC, who rented a property from Mr. Burke, said: "He promised to sell me the house once the paperwork was done. He said he was buying it in a short sale. So, of course, I told my kids that we're buying this house. We don't have to move." *Id.* at 14. Victim LC later learned that "the mortgage company wanted [her] out because it was their property and he had no business renting it to [her]." *Id.*

The reliance-on-counsel defense is further undermined by Burke's own sworn statements during the plea hearing:

> The Court: And in those cases, is it correct that those statements were untrue when made?
>
> The Defendant: Yes, your Honor.
>
> The Court: No one forced you to participate in these business arrangements?
>
> The Defendant: No, sir.
>
> The Court: You did so knowingly and voluntarily?
>
> The Defendant: Yes, your Honor.
>
> The Court: Knowing them in some cases to involve fraud?
>
> The Defendant: Yes.

ECF No. 14-1 at 48. And the PSR, which Burke said he had read and understood, ECF No. 14-2 at 23, notes that Burke "led an attorney . . . to speak to the property owners or witness the property owners sign a quit claim deed" despite knowing "that the information provided by [the attorney] was false and fraudulent," PSR at ¶ 14. Moreover, Burke's previous convictions for equity skimming and mail fraud likewise suggest that he did not solicit legal advice in good faith

as these convictions stemmed from similar behavior, namely, fraudulently obtaining control over properties and then renting them out. *Id*. at ¶ 57. So while Burke does not actually assert that Barneys advised him that the business arrangements he entered into in this case were lawful, any such assertion would be insufficient to show good faith reliance on such advice in light of the evidence that Burke had previously been convicted of mail fraud for entering into similar arrangements. PSR ¶ 57.

Finally, Attorney Barneys, the attorney on whose advice Burke allegedly relied, was charged along with Burke and pled guilty to conspiracy to commit mail and wire fraud. In his plea agreement, Barneys stipulated to conspiring with Burke to "defraud homeowners who were in various stages of foreclosure." *United States v. Burke et al*, Dkt. 16-cr-29, ECF No. 149 at 10 (Barneys Plea Agreement). Barneys explained that he knew "Burke's representations to the homeowners were materially false because he knew that Burke had no intention of buying the properties and paying the outstanding mortgages on the properties," but that he nevertheless "continued to participate in these meetings and represented to homeowners . . . that these transactions were legitimate." *Id*. He further stipulated that "[w]hen questioned by homeowners about the status of their sales, Barneys would assure them that their sales to Burke or one of his companies were progressing as Burke promised." *Id*.

Burke cannot establish that Attorney Maguire's performance was deficient nor that it prejudiced his defense. First, regarding performance, it was reasonable for Attorney Maguire not to suggest a reliance-on-counsel defense in light of the significant evidence in the underlying record that Burke did not engage Barneys in good faith, but rather as a co-conspirator. *DeLuca*, 77 F.3d at 588 n.3 (explaining that the decision not to pursue a particular defense "does not constitute deficient performance if . . . the lawyer has a reasonable justification for the

13

decision"). Although Burke now asserts that he relied on advice from Barneys, his assertions are not credible in light of his sworn admissions at the change-of-plea colloquy, his previous convictions for similar conduct, victim statements, and the admissions of co-defendant Barneys. *See Puglisi*, 586 F.3d at 214 (explaining that the court "need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding").

Second, even assuming that Attorney Maguire's decision not to pursue the reliance-on-counsel defense rendered his performance deficient, it did not prejudice Burke's defense. As discussed above, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59. Here, it is unlikely that the Court would even have permitted a reliance-on-counsel instruction because Burke has not proffered any evidence showing that he solicited advice from Barneys in good faith, let alone countered the substantial evidence in the record that indicates otherwise. *U.S. v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) (explaining that the instruction is only given "if there are sufficient facts in the record to support the defense" and that "[t]here must be evidence such that a reasonable juror could find that the defendant honestly and in good faith sought the advice of counsel, fully and honestly laid all the facts before his counsel, and in good faith and honestly followed counsel's advice") (internal quotation marks omitted). For the same reasons, it is unlikely that such a defense – if permitted at trial – would have succeeded.

### C. Ineffective Assistance in Connection with Other Defenses

Burke's third claim for ineffective assistance of counsel is premised largely on the same arguments already discussed in his first and second ineffective assistance claims. *See* ECF No. 4

14

at 19 (arguing that Attorney Maguire should have investigated and presented evidence of Burke's efforts to resolve his tax liabilities); *id.* at 20 (arguing that Attorney Maguire "could have presented a convincing picture for a jury that Barneys controlled and manipulated an illegal operation in which [he] was an unwary participant"). It is unnecessary to address those arguments again.

Burke also argues that there was insufficient evidence to support other charges in the second superseding indictment. He argues that "[h]ad Mr. Maguire conducted a reasonably thorough investigation of the actual underlying facts in this case . . . [other] charges would have been discovered as devoid of substance" and this "revelation would have been instrumental in evaluation of a proper direction that the Defense's case should follow." ECF No. 4 at 21. Here, Burke appears to be arguing that Attorney Maguire should have conducted additional investigation into the other charges and advised him to go to trial on all counts. As discussed in detail above, however, it is unlikely that Burke would have succeeded at trial on the tax evasion and mail fraud counts. And he makes only conclusory statements about the other charges, to which he in any event did not plead guilty. *See, e.g.*, ECF No. 4 at 20 (arguing, as to the aggravated identity theft charge, that "[t]here was not a scintilla of actual evidence supporting the charge of aggravated identity theft, as nothing indicated that [he] used the personal information of another existing person, without his permission, in pursuit of a criminal purpose" without any further explanation). To succeed on an ineffective assistance claim, the "likelihood of a different result must be substantial, not just conceivable," *Harrington*, 562 U.S. at 112, and such conclusory statements fall short of meeting this threshold.

15

### D. Voluntariness of Guilty Plea

Finally, Burke makes several statements throughout his memorandum alleging that he was coerced into entering a guilty plea. *See, e.g.*, ECF No. 4 at 35 ("Mr. Maguire revealed a strategy to me which I did not approve of, namely, to induce, counsel, manipulate, and strenuously advise me to enter guilty pleas to certain charges proffered by the Government."); *id.* at 36 ("I was then triple-teamed by the 3 attorneys, who used their persuasiveness to coerce me and induce me to believe that I had to plead guilty to the charges."); *id.* ("I felt scared that, if forced to trial, [Attorney Maguire] definitely at this point would not represent me properly."). However, these claims of coercion are belied by Burke's sworn statements at the change of plea hearing:

> Q. . . . Have you had any trouble communicating with Mr. Maguire, your lawyer?
>
> A. None whatsoever.
>
> Q. You've been able to understand him and he's been able to understand you as far as you know?
>
> A. Yes.

ECF No. 14-1 at 5.

> The Court: From your perspective, Mr. Burke, have you had enough opportunity and enough information to discuss your case with Mr. Maguire?
>
> The Defendant: Yes, Your Honor, I have.
>
> The Court: Are you satisfied to have him represent you in these proceedings?
>
> The Defendant: Yes, sir.
>
> The Court: Is there any way in which you are not fully satisfied with his advice and representation?
>
> The Defendant: None. I'm totally satisfied.

ECF No. 14-1 at 8.

> The Court: . . . So, Mr. Burke, does the written Plea Agreement as outlined by Mr. Huang on behalf of the Government, fully and accurately reflect your understanding of the agreement you've entered into with the Government?
>
> The Defendant: Yes, Your Honor, it does. Yes.
>
> The Court: Other than the promises that are contained in the written agreement, has anyone made any other promises or statements to you that have caused you to plead guilty?
>
> The Defendant: No, sir.
>
> The Court: Has anyone made any threats against you induce you to plead guilty?
>
> The Defendant: No.
>
> The Court: Is anyone forcing you in any way to plead guilty?
>
> The Defendant: No, Your Honor.
>
> The Court: Are you choosing to plead guilty today of your own free will and because you are, in fact, guilty?
>
> The Defendant: Yes.

ECF No. 14-1 at 26-27. These exchanges demonstrate that Burke had ample opportunity to advise the court of any dissatisfaction with Attorney Maguire's representation. Instead, however, Burke stated that he was "totally satisfied" to have Attorney Maguire represent him. ECF No. 14-1 at 8. Burke's present assertion that he was coerced into entering a guilty plea is therefore undermined by his statements during the change of plea hearing. *Puglisi*, 586 F.3d at 214 (explaining that the court "need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding").

Moreover, Burke appears to argue that he was coerced to accept the Plea Agreement, at least in part, because of the potential post-trial sentence. *See, e.g.*, ECF No. 4 at 36 ("Mr. Maguire had stated to me on numerous occasions that he was convinced that if I lost at trial, and was found guilty, that I would receive 12-15 years."). However, advice from competent counsel

17

about the potential post-trial sentence does not constitute coercion. *See, e.g.*, *Shearer v. Smith*, 2013 WL 5586311, at *4 (S.D.N.Y. Oct. 9, 2013) ("Petitioner's argument that he was somehow coerced into accepting the plea because of its *advantageous* nature—in that the plea reduced Petitioner's potential sentence from twenty-five to fifteen years—is directly at odds with the law. While one of the factors motivating Petitioner's decision to accept the guilty plea may have been the possibility of a heavier sentence following a guilty verdict after a trial, the Supreme Court has expressly held that even if fear of an increased sentence causes a defendant to accept a plea, it does not necessarily prove that the plea was coerced and invalid as an involuntary act.") (internal quotation marks and citations omitted); *France v. Strack*, 2001 WL 135744, at *3 (E.D.N.Y. Jan. 30, 2001) ("Pleading guilty to avoid a more severe sentence does not in itself qualify as involuntary because the plea can nonetheless be the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage. In particular, strong advice from counsel does not amount to the kind of coercion that renders a plea involuntary when the state has considerable evidence of guilt.") (internal quotation marks and citations omitted).

The "[s]olemn declarations in open court" made by Burke at the plea hearing "carry a strong presumption of verity," *Gonzalez*, 722 F.3d at 131 (internal quotation marks omitted); demonstrate that he entered a voluntary, knowing, and intelligent plea without any indication of coercion; and belie Burke's post-hoc statements about the voluntariness of his actions.

* * *

I find that Burke has failed to state a plausible claim of ineffective assistance of counsel. Accordingly, a hearing is not warranted.

**IV. Conclusion**

For the reasons set forth above, Burke's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED.

/s/  MICHAEL P. SHEA
Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
             July 11, 2019